IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| T-MOBILE NORTHEAST LLC, successor-in-interest to Omnipoint Communications, Inc., <br><br> Plaintiff, <br><br> -against- <br><br> 167 LLC, BAINBRIDGE 2875 LLC, and 1425 U LLC, <br><br> Defendants. | Civil Action No.: 1:22-cv-8369 <br><br><br> **COMPLAINT** |

Plaintiff T-Mobile Northeast LLC, successor-in-interest to Omnipoint Communications, Inc. ("T-Mobile"), by its attorneys, Porzio, Bromberg & Newman, P.C., as and for its Complaint against defendants 167 LLC, Bainbridge 2875 LLC, and 1475 U LLC, states as follows:

## INTRODUCTION

1. Plaintiff T-Mobile, as lessee, entered into three separate lease agreements ("Leases") with each defendant, as lessor, to maintain and operate a cellular wireless facility at each of the defendant's respective properties in the Bronx. The Lessors for all three properties are ultimately owned by the same person or persons, and the issues herein pertaining to all three property sites is the same.

2. T-Mobile's cellular facilities allow it to transmit radio signals from its equipment as part of its cellular network for the public's benefit. Upon information and belief, non-party Chestnut Holdings of New York, Inc. ("Chestnut") is the property manager for each defendant at each of the three sites at issue (the "Properties") and is responsible for addressing T-Mobile's rights and communicating with T-Mobile and each lessor.

3. The Leases expressly permit T-Mobile to use and occupy portions of the rooftop located on each of the Properties to install, operate and maintain a cellular wireless facility. As

7099406

stated, the wireless facility consists of various telecommunications equipment, including, but not limited to, radio transmitting and receiving antennas, radio equipment cabinets and related cables and utility lines (the "Antenna Facilities"). The Antenna Facilities support T-Mobile's wireless telecommunications network, which provides wireless cellular coverage in the vicinity of each of the Properties, including voice transmissions and electronic data service for T-Mobile customers, emergency first responders and anyone attempting to access Enhanced 911 ("e911") services.

4. Because technology is constantly changing in the telecommunications industry, replacements and updates to T-Mobile's Antenna Facilities are routinely required. Accordingly, T-Mobile expressly provided for such rights to update and modify its equipment in the Leases.

5. Defendants have an obligation, both express and implied under the Leases, to cooperate with T-Mobile in good faith.

6. For more than one year, T-Mobile has sought from each defendant, through numerous communications with Chestnut, defendants' simple signature on an approval form required by the New York City Fire Department to access the roof of each property. Signing this form is part of the normal process of securing work permits from the New York City Department of Buildings to allow T-Mobile's contractors to perform its needed equipment upgrades. Defendants have unreasonably failed to cooperate. Despite many written requests, they have failed to sign the New York City Fire Department's form, necessitating this litigation.

7. The equipment upgrades for the Antenna Facilities are necessary and essential for T-Mobile to increase capacity, speed, and ensure coverage in and around the Properties. The upgrades will enhance the capacity to handle ever-increasing voice and data traffic, improve the quality and speed of all transmissions, and facilitate uninterrupted wireless coverage. The inability to complete these upgrades, due solely to defendants' lack of cooperation, may result in increased

dropped calls, degraded wireless service, and interference with emergency e911 services, all to the detriment of the public and to T-Mobile.

8. Defendants are violating the express and implied terms of the Leases by unreasonably refusing to sign the required form as repeatedly requested.

9. As a result of defendants' material breaches, T-Mobile requires a decree of specific performance and permanent injunction compelling each defendant to sign the required approval forms as requested and give T-Mobile their full cooperation, including providing information and access as and when needed, to permit T-Mobile to upgrade the Antenna Facilities without further delay. An award of compensatory damages and attorneys' fees incurred is also demanded, as provided below.

## PARTIES

10. Plaintiff T-Mobile Northeast LLC, successor-in-interest to Omnipoint Communications, Inc. ("T-Mobile"), is in the business of leasing, installing, operating, and maintaining wireless telecommunications equipment necessary to provide cellular telephone services. T-Mobile is a wholly-owned subsidiary of T-Mobile USA, Inc. ("T-Mobile USA"), a provider of cellular telecommunications services in the United States.

11. Upon information and belief, defendant 167 LLC is a New York limited liability company having an address at c/o Chestnut Holdings of New York, Inc., 5676 Riverdale Avenue, Ste. 307, Bronx, New York 10471, and is the owner of the property located at 1194 Cromwell Avenue, Bronx, New York.

12. Upon information and belief, defendant Bainbridge 2875 LLC is a New York limited liability company having an address at c/o Chestnut Holdings of New York, Inc., 5676

Riverdale Avenue, Ste. 307, Bronx, New York 10471, and is the owner/owner assignee of the property located at 2875 Bainbridge Avenue, Bronx, New York.

13. Upon information and belief, defendant 1425 U LLC is a New York limited liability company having an address at c/o Chestnut Holdings of New York, Inc., 5676 Riverdale Avenue, Ste. 307, Bronx, New York 10471, and is the owner of the property located at 1425 University Avenue, Bronx, New York.

14. Upon information and belief, all three properties are managed solely by Chestnut and share common ownership by Jonathan Weiner and/or his family, sole member(s) of each defendant-LLC entity.

## JURISDICTION AND VENUE

15. Plaintiff T-Mobile is a Delaware limited liability company. The sole member of T-Mobile is T-Mobile USA, Inc., a citizen of the State of Delaware with its principal place of business in Bellevue, Washington. T-Mobile, therefore, is a citizen of Delaware and Washington for diversity purposes.

16. Upon information and belief, defendants 167 LLC, Bainbridge 2875 LLC, and 1425 U LLC are each single member New York limited liability companies whose member is Jonathan Weiner, a citizen of the State of New York. Upon information and belief, if Mr. Weiner has any co-member in the defendant companies, they are members of his family and citizens of New York, and none of whom, on information and belief, are citizens of either Delaware or Washington.

17. The matter in controversy concerns a dispute, the subject matter of which is in excess of $75,000, exclusive of interest and costs. The amount of money T-Mobile will pay defendants through the expiration of the Leases exceeds $75,000.

18. This Court has subject matter jurisdiction over the instant matter pursuant to 28 U.S.C. §1332(a)(1) (diversity of citizenship).

19. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §1391 in that jurisdiction is founded solely on diversity of citizenship. Further, a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, and the property that is the subject of this action is situated in this judicial district.

## BACKGROUND

20. T-Mobile provides wireless service to customers through a network of antennas mounted on towers, buildings, or other structures - - often referred to as wireless facilities or Antenna Facilities - - that broadcast signals to and from customers' wireless phones and other devices. Communications to and from users of a device are transmitted wirelessly to the nearest Antenna Facility, and then to a switching facility where they are routed to either complete the voice call or data request.

21. T-Mobile's Antenna Facilities enable T-Mobile USA to broadcast signals over frequencies licensed by the Federal Communications Commission to provide wireless cellular service to thousands of customers in the vicinity of the Antenna Facilities. Additionally, as required by the FCC, T-Mobile's Antenna Facilities allow the public to access e911 services in the event of an emergency, and permit emergency service first responders to communicate in the performance of life-saving activities. T-Mobile's nationwide network also provides GPS services to municipal emergency personnel, and supports local and national law enforcement agencies.

22. T-Mobile selects the location of its Antenna Facilities based upon the needs of its wireless network. When a gap in coverage exists or the network is experiencing capacity issues,

T-Mobile builds additional sites, and/or upgrades existing sites, to try to avoid dropped calls or slow data connections.

23. Due to the ever-changing improvements in wireless technology, it is common that T-Mobile is presented with a need to upgrade and improve its Antenna Facilities with new devices or equipment. The need is based on the proliferation of wireless devices and communications and increased voice and data traffic. Because of this need, T-Mobile has provisions in the Leases with defendants to allow T-Mobile to upgrade, modify or improve its equipment. Denial of that right is a material breach of the Leases. Defendants are also obligated, express and implied, to cooperate with T-Mobile so that the intended purpose of the Leases can be achieved.

## THE THREE LEASES AND DEFENDANTS' BREACHES

**1. Lease with 167 LLC**

24. On or about March 19, 2001, T-Mobile and 167 LLC's predecessor-in-interest entered into a Rooftop Lease that expressly grants T-Mobile the right to install, operate and maintain a wireless communications facility on the roof of the building located at 1194 Cromwell Avenue, Bronx, New York. (See Lease with 167 LLC at ¶¶ 1(a) and 3, a true copy of which is attached hereto as **Ex. A**.)

25. The Lease enables T-Mobile to provide wireless coverage in and around the property.

26. The Lease provides that the space leased to T-Mobile will allow it to place and operate T-Mobile's wireless communications facility, and that the premises is generally depicted in Exhibit B to the Lease:

> Landlord leases to [T-Mobile] a certain portion of the real property (the "Property") described in attached Exhibit A, sufficient for the placement of Antenna Facilities (as defined below), together with all necessary space and easements for access and

utilities, as generally described and depicted in attached <u>Exhibit B</u> (collectively referred to hereinafter as the "Premises").

(167 LLC Lease, ¶ 1(a) and Exhibits A and B to the Lease).

27. The Lease states that the leased premises may be used by T-Mobile for the transmission and reception of radio communications signals and for the construction, installation, operation, maintenance, repair, removal or replacement of related facilities, tower and base, antennas, microwave dishes, equipment shelters and/or cabinets and related activities. (<u>Id</u>., ¶ 3.)

28. The Lease further provides:

Landlord agrees to cooperate with [T-Mobile] in obtaining, at [T-Mobile's] expense, all licenses and permits or authorizations required for [T-Mobile's] use of the Premises.

(<u>Id</u>., ¶ 1(b).)

29. Paragraph 1(b) of the Lease also expressly appoints TMO "as agent for all land use and zoning permit applications, and Landlord agrees to cooperate with and allow [T-Mobile], at no cost to Landlord, to obtain a title report, zoning approvals and variances …"

30. The Lease expressly grants T-Mobile the right to improve, replace and enhance its Antenna Facilities at any time during the Lease term, and to install any facilities necessary to operate its communications system. (<u>Id</u>., ¶ 7(a).)

31. The Lease contains a provision stating that in the event of any litigation, the substantially prevailing party shall be entitled to its reasonable attorneys' fees and costs. (<u>Id</u>., ¶ 18(a).)

32. The Lease with 167 LLC, through amendments/renewals, is currently in full force and effect.

33. T-Mobile has at all times complied with its obligations under the Lease.

**167 LLC's Breach**

34.     Pursuant to a First Amendment to Rooftop Lease dated June 18, 2020, 167 LLC gave its consent to modifications to be made to the Antenna Facilities, as authorized by the Lease.

35.     In furtherance of the process of securing appropriate work permits needed from the New York City Department of Buildings to begin and complete the equipment modifications on the rooftop of 167 LLC's property, T-Mobile requested 167 LLC's agent, Chestnut, to have Form TM-5 signed by the property owner.   That three-page form is entitled "Application for Rooftop Access Variance/Plan Review" and is issued by the New York City Fire Department.

36.     Form TM-5 must be signed by the property owner in order for the New York City Department of Buildings to issue work permits regarding rooftop telecommunication upgrades.

37.     Chestnut and 167 LLC have unreasonably delayed the return of the needed TM-5 form, expressing defendant's putative concern that the equipment modification to which T-Mobile has the right to make under the Lease might potentially interfere with some future plan to install solar panels on the rooftop.

38.     Such delays have been created in bad faith and have persisted for over one year.

39.     T-Mobile has made several written requests to obtain the signed TM-5 form, all to no avail.

40.     Despite 167 LLC's express and implied obligation of good faith to cooperate with T-Mobile, it has failed to do so.

**2.     Lease with Bainbridge 2875 LLC**

41.     On or about July 31, 1996, T-Mobile and Bainbridge 2875 LLC's predecessor-in-interest entered into a Standard Lease Agreement that expressly grants T-Mobile the right to install, operate and maintain a wireless communications facility on the roof of the building located at 2875

Bainbridge Avenue, Bronx, New York. (See Lease with 2875 Bainbridge LLC at ¶ 2(a), a true copy of which is attached hereto as **Ex. B**.)

42. The Lease, as amended, enables T-Mobile to provide wireless coverage in and around 2875 Bainbridge Avenue.

43. The 2875 Bainbridge Lease provides that the space leased to T-Mobile will be used for the placement and operation of T-Mobile's wireless communications facility, and that the premises is generally depicted in Exhibit B to the Lease:

> Lessor agrees to lease to Lessee approximately forty square feet of space on the rooftop of the elevator mechanical wall to house a radio equipment cabinet and space on the roof of the building for associated antenna more fully described on Exhibit B ...

(Ex. B hereto, ¶ 1.)

44. The Lease states that T-Mobile has the right "to use whatever measures it deems reasonably appropriate to install its equipment" and that "Lessor agrees to cooperate with Lessee, at Lessee's expense, in making application for and obtaining any local, state, federal licenses permits and any other approvals which may be required to allow Lessee use of the premises." Id., ¶ 2(b).

45. The Lease, as later amended, expanded the agreed space given to T-Mobile by Amendment No. 1 to Lease, dated August 28, 2000, a copy of which is attached as **Ex. C**. Under that amendment, T-Mobile was given the right to "modify and/or improve its equipment" within the area allotted to T-Mobile. (See Ex. C, ¶1(c)).

46. The Lease with Bainbridge 2875 LLC, through amendments/renewals, is currently in full force and effect.

47. T-Mobile has at all times complied with its obligations under the Lease.

**2875 Bainbridge LLC's Breach**

48. T-Mobile has provided all construction drawings to Chestnut showing the specific upgrades to the Antenna Facilities at 2875 Bainbridge Avenue, and no objection has been given.

49. In furtherance of the process of securing appropriate work permits needed from the New York City Department of Buildings to begin and complete the equipment modifications on the rooftop of 2875 Bainbridge LLC's property, T-Mobile requested 2875 Bainbridge LLC's agent, Chestnut, to have Form TM-5 signed by the property owner. That three-page form is entitled "Application for Rooftop Access Variance/Plan Review" and is issued by the New York City Fire Department.

50. Form TM-5 must be signed by the property owner in order for the New York City Department of Buildings to issue work permits regarding rooftop telecommunication upgrades.

51. Chestnut and 2875 Bainbridge LLC have unreasonably delayed the return of the needed TM-5 form, expressing defendant's putative concern that the equipment modification to which T-Mobile has the right to make under the Lease might potentially interfere with some future plan to install solar panels on the rooftop.

52. The delays have been created in bad faith and have persisted for over one year.

53. Chestnut and 2875 Bainbridge LLC have been unreasonably delaying the return of the needed TM-5 form, expressing defendant's concern that the equipment modification to which T-Mobile has the right to make under the Lease might interfere with future plans to install solar panels on the roof.

54. The delays have been going on for over one year.

55. T-Mobile has made several written requests to obtain the signed TM-5 form but to no avail.

56. Despite 2875 Bainbridge LLC's express and implied obligation of good faith to cooperate with T-Mobile, it has failed to do so.

3. **Lease with 1425 U LLC**

57. On or about August 26, 1996, T-Mobile and 1425 U LLC's predecessor-in-interest entered into a Standard Lease Agreement that expressly grants T-Mobile the right to install, operate and maintain a wireless communications facility on the roof of the building located at 1425 University Avenue, Bronx, New York. (See Lease with 1425 U LLC at ¶ 2(a), a true copy of which is attached hereto as **Ex. D**.)

58. The Lease enables T-Mobile to provide wireless coverage in and around 1425 University Avenue.

59. The Lease provides that the space leased to T-Mobile will allow for the placement and operation of T-Mobile's wireless communications facility, and that the premises is generally depicted in Exhibit B to the Lease:

> Lessor agrees to lease to Lessee approximately seventy-five square feet of space on the rooftop of the elevator mechanical wall to house a radio equipment cabinet and space on the roof of the building for associated antenna more fully described on Exhibit B ...

(Ex. D hereto, ¶ 1.)

60. The 1425 U LLC Lease states that T-Mobile has the right "to use whatever measures it deems reasonably appropriate to install its equipment" and that "Lessor agrees to cooperate with Lessee, at Lessee's expense, in making application for and obtaining any local, state, federal licenses permits and any other approvals which may be required to allow Lessee use of the premises." (Id., ¶ 2(b).)

61. The Lease was later amended to expand the space given to T-Mobile by Amendment No. 1 to Lease, dated August 7, 2000, a copy of which is attached as **Ex. E**. Under

that amendment, T-Mobile was given the right to "modify and/or improve its equipment" within the area allotted to T-Mobile.  (See Ex. E, ¶1(c).)

62. The Lease with 1425 U LLC, through amendments/renewals, is currently in full force and effect.

63. T-Mobile has at all times complied with its obligations under the Lease.

**1425 U LLC's Breach**

64. Pursuant to a Third Amendment and Reinstatement to Standard Lease Agreement dated June 18, 2020, 1425 U LLC gave its consent to modifications to be made to the Antenna Facilities, as authorized by the Lease.

65. In furtherance of the process of securing appropriate work permits needed from the New York City Department of Buildings to begin and complete the equipment modifications on the rooftop of 1425 U LLC's property, T-Mobile requested 1425 U LLC's agent, Chestnut, to have Form TM-5 signed by the property owner.  That three-page form is entitled "Application for Rooftop Access Variance/Plan Review" and is issued by the New York City Fire Department.

66. Form TM-5 must be signed by the property owner in order for the New York City Department of Buildings to issue work permits regarding rooftop telecommunication upgrades.

67. Chestnut and 1425 U LLC have unreasonably delayed the return of the needed TM-5 form, expressing defendant's putative concern that the equipment modification to which T-Mobile has the right to make under the Lease might potentially interfere with some future plan to install solar panels on the rooftop.

68. Such delays have been created in bad faith and have persisted for over one year.

69. T-Mobile has made several written requests to obtain the signed TM-5 form but to no avail.

70. Despite 1425 U LLC's express and implied obligation of good faith to cooperate with T-Mobile, it has failed to do so.

**COUNT ONE**
**(Specific Performance against all Defendants)**

71. T-Mobile repeats each and every allegation aforementioned as if set forth at length herein.

72. T-Mobile has an existing contract (the Leases) with each defendant, the terms of which are clear and unambiguous.

73. T-Mobile is ready and willing to perform its obligations under the Leases, and in fact has fully performed its obligations under the Lease.

74. Under the Leases, T-Mobile and its representatives and agents have the express right to access the subject premises for the purpose of modifying and enhancing its Antenna Facilities.

75. Defendants' refusal to cooperate with T-Mobile and its representatives so as to allow T-Mobile to upgrade its Antenna Facilities on the premises at each site is a violation of the respective Lease.

76. The remedy of specific performance is needed to require Defendants and their agent, Chestnut, to honor their contractual obligations under the Leases.

77. Specific performance poses no undue, disproportionate, or inequitable burden upon any defendant.

78. Money damages are an inadequate remedy in light of the unique nature of the real property and the services that the Antenna Facilities provide.

79. By reason of the foregoing, plaintiff, T-Mobile, demands a decree against each defendant in the form of specific performance of the Leases, enforcing their terms, and particularly, directing defendants to sign all needed forms without further delay and cooperate with T-Mobile without condition to provide all information requested so as to allow it to perform all equipment upgrades to its Antenna Facilities.

## COUNT TWO
### (Breach of Contract against all Defendants)

80. T-Mobile repeats each and every allegation aforementioned as if set forth at length herein.

81. T-Mobile and defendants entered into a binding agreement, the terms of which are contained in the respective Lease with each.

82. T-Mobile has fully complied with all of its obligations under each of the Leases.

83. Defendants have breached its agreement with T-Mobile by refusing to sign the needed forms so as to allow T-Mobile to proceed with its upgrades to the Antenna Facilities.

84. By reason of the foregoing, T-Mobile has been damaged and is entitled to all compensatory and consequential damages in an amount to be determined at trial, plus interest thereon.

## COUNT THREE
### (Breach of the Implied Covenant of Good Faith against all Defendants)

85. T-Mobile repeats each and every allegation aforementioned as if set forth at length herein.

86. In each Lease, defendants have an obligation to act in good faith, which is implicit under New York law for all contractual relationships.

87. In each Lease, defendants have an obligation to not frustrate T-Mobile's right to enjoy and use the leased premises for the stated purpose expressed in the Leases, including the ability to timely upgrade its Antenna Facilities.

88. Defendants have knowingly and unfairly denied T-Mobile the ability to enjoy the benefits of the Leases as is implicit in each Lease.

89. Defendants have opted, in bad faith, to stall, delay, and impede T-Mobile's upgrades, frustrating the intentions under the Leases.

90. By reason of the foregoing, T-Mobile has been damaged and is entitled to all compensatory and consequential damages in an amount to be determined at trial, plus interest thereon.

## COUNT FOUR
### (Injunctive Relief against all Defendants)

91. T-Mobile repeats each and every allegation aforementioned as if set forth at length herein.

92. In equity and good conscience, defendants should be enjoined from delaying or interfering with T-Mobiles' rights under the Leases.

93. Defendants' efforts to frustrate T-Mobile's rights has been, and is being, done in bad faith, and should not be permitted by a court of equity.

94. T-Mobile is likely to suffer irreparable injury in the absence of an injunction.

95. Remedies at law, such as monetary damages, are inadequate to compensate for Defendants' contractual breaches.

96. The balance of hardships tips in T-Mobiles' favor by granting injunctive relief.

97. The public interest would not be disserved by the issuance of an injunction.

98. By reason of the foregoing, a preliminary and permanent injunction should issue to enjoin further breaches of contract by Defendants.

## COUNT FIVE
### (Recovery of Legal Fees Against 167 LLC)

99. T-Mobile repeats each and every allegation aforementioned as if set forth at length herein.

100. The Lease with 167 LLC expressly states that the substantially prevailing party in any litigation arising hereunder shall be entitled to its reasonable attorneys' fees and court costs, including appeals, if any.  (See 167 LLC Lease, ¶ 18(a)).

101. Under the Lease, T-Mobile is entitled to recover all legal fees incurred by reason of 167 LLC's breach of contract.

102. Accordingly, T-Mobile is entitled to judgment in an amount to be determined for all reasonable legal fees and costs incurred.

**WHEREFORE**, plaintiff T-Mobile demands judgment against defendants, as follows:

(a) On the First Claim for Relief, compelling defendants to require defendants and their agent, Chestnut, to honor their contractual obligations under the Leases, including sign all documents, forms, and lease amendments as requested, provide all information reasonably requested, and not interfere with or impede the timely performance under the Leases;

(b) On the Second and Third Claims for Relief, awarding T-Mobile compensatory and consequential damages in an exact amount to be determined at trial;

(c) On the Fourth Claim for Relief, preliminarily and/or permanently enjoining defendants from further bad faith conduct designed to frustrate T-Mobile's rights under the Leases;

(d) On the Fifth Claim for Relief, granting T-Mobile reasonable attorneys' fees, costs and disbursements against 167 LLC as authorized by the Lease; and

(e) Granting T-Mobile such other and further relief as deemed just and proper.

Dated: New York, New York
September 30, 2022

**PORZIO, BROMBERG & NEWMAN, P.C.**

By: ___s/Gary M. Fellner_____
Gary M. Fellner
1675 Broadway, Suite 1810
New York, NY 10019
(212) 265-6888
GMFellner@pbnlaw.com
*Attorneys for Plaintiff T-Mobile Northeast LLC*